## KOZMINSKY v. OREGON SHORT LINE RAILROAD COMPANY.

No. 2021. Decided October 8, 1909 (104 Pac. 570).

1. CARRIERS—CARRIAGE OF PASSENGERS—FARES—"OBTAINABLE." The word "obtainable," in a contract providing that scrip exchangeable for tickets will not be honored for passage on trains except from stations where tickets are not obtainable, cannot be given its full natural meaning, but must be restricted to mean that scrip cannot be used for fare on trains, except from stations where tickets are not kept on sale or for exchange for scrip. (Page 458.)

2. CARRIERS—CARRIAGE OF PASSENGERS—FARES. A contract provided that scrip issued by a railroad company, exchangeable for tickets, would not be honored on trains except from stations where tickets were not obtainable. Plaintiff, a passenger, got off a train at a station, and attempted to exchange his scrip for a

ticket to another station while the train was waiting, but was unable to do so before the train left. *Held,* that he could not assert that the ticket was not obtainable by him at the station, so as to authorize him to tender the scrip to the conductor for his passage. (Page 459.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by H. S. Kozminsky against the Oregon Short Line Railroad Company.

Judgment for defendant. Plaintiff appealed.

AFFIRMED.

*King, Burton & King* and *E. A. Walton* for appellant.

*P. L. Williams, Geo. H. Smith* and *Jno. G. Willis* for respondent.

FRICK, J.

Appellant brought this action to recover damages which he alleges he sustained by reason of having been wrongfully ejected from one of respondent's passenger trains. At the trial, after both parties had rested, the district court directed the jury to return a verdict in favor of respondent. Judgment was duly entered upon this verdict, and hence this appeal.

The principal error assigned relates to the ruling of the court in directing a verdict for the respondent. As we view the matter, the question of whether the court erred depends upon the meaning to be given to certain provisions of a contract which was in force between the parties, and from which their respective rights and duties as carrier and passenger must be determined. It appears that respondent, for its own as well as for the convenience of its patrons, sold and issued certain scripbooks. The scrip contained in the books was exchangeable for passage tickets the same as money or cash would have been. The scrip was, however, not receivable by the conductors as fare on trains except

under certain conditions named in the contract issued with the books. It also appears that if a ticket could be obtained at the station where the passenger intended to board the train by exchanging scrip therefor, and this was not done, the cash fare when paid on the train would be in excess of what it would have been if a ticket for the same distance had been obtained. In other words, the purchase of a scrip-book, and in using the scrip in exchange for tickets, under certain conditions at least, meant a reduction of fare.

The provisions of the contract aforesaid which we deem material are as follows: "The person presenting this book is entitled to receive in exchange for the scrip in this book, at its full value, one way, continuous passage, first-class local and interline tickets . . . having both origin and destination upon the lines named in this book." Then follows the names of the several railroad lines that will receive the scrip in exchange for passage tickets. Then the following condition is inserted: "The scrip in this book will not be honored for passage on trains except from stations where tickets are not obtainable." And, further, "the scrip must be detached by the agent and will not be valued or honored if otherwise detached." It is conceded by both parties that the provisions aforesaid were in full force and effect, and the only contention between them is with respect to the meaning and legal effect of the foregoing provisions.

The material facts sufficiently appear from the testimony of appellant, which is as follows:

"I left Montpelier on defendant's train No. 1, in the afternoon of October 31, 1902. Purchased a ticket to Soda Springs. That train went to Pocatello. On the train I made up my mind to go to Pocatello, a point beyond Soda Springs. On arriving at Soda Springs, having gone forward as far as I could, and almost before the train stopped, I ran up to the baggage car, where the agent and conductor were, and I handed the book out to the agent, and told him I wanted a ticket to Pocatello. The agent said: 'I haven't got time to sell you any; you ought to come in before the train came in.' I said, 'I came in on the train, and I could not get here any sooner.' He said, 'I haven't got time to sell you any.' The conductor was right there, and I said to the conductor: 'I have a scripbook here, and I want a ticket to Pocatello. This agent says he won't sell me one.'

The conductor said, 'Well, we can't take it on the train.' So I turned to the agent and said: 'Do you hear what this conductor says, that he can't take this scrip on the train? I want a ticket.' With that the conductor turned to the agent and said, 'How long does it take to get one of these tickets out?' The agent said, 'Oh, three or four minutes. . . . The conductor said, 'Can't hold the train.' I walked back to the ticket office. It was closed, and when they were ready to pull out I got on the train. I think that train was at the station four or five minutes. It takes from one-half to one minute to purchase a ticket with scrip. This scrip is arranged in 5-cent pieces. A line of the scrip represents 5 cents. My baggage and grips were in a Pullman car. I remained there until we got to Bancroft. The conductor came in and asked me for my fare. I handed him up the scripbook. He refused to take it, and said I would have to pay cash, and he said I would have to get off. I declined to pay cash. He went through the train, and we stopped at Bancroft, and immediately on leaving Bancroft he came into the car where I was and said, 'Tickets?' I handed him up the scripbook, and he said: 'I can't take it. Will you pay cash?' I said, 'No, sir,' and he stopped the train and put me off. . . . The scrip was 2 1-2 cents a mile, and I did not want to pay 4 cents for local fares. It is probably 70 miles from Soda Springs to Pocatello."

From the foregoing it is reasonably certain that appellant attempted to obtain a ticket at Soda Springs; that he failed to obtain it for the sole reason that he applied for it at a time when respondent's agent was unable to issue a ticket before the passenger train upon which respondent intended to ride departed from Soda Springs; that respondent had tickets on sale at Soda Springs, and that tickets were obtainable there, and that appellant was ejected from the train for the sole reason that he had boarded it without procuring a ticket and had refused to pay the local cash fare from Soda Springs to Pocatello, the point he intended to reach as a passenger on that train. The question therefore is, Was appellant wrongfully ejected from the train? Appellant does not contend that respondent did not have the legal right to eject him from the train, as was done, if he had refused to pay fare, but contends that he did not refuse to pay fare, inasmuch as he tendered scrip to the conductor in payment of his fare. Respondent contends that the conditions contained in the contract under which the conductor was authorized to receive scrip instead of cash did not exist,

and hence, by the very terms of the contract, appellant was in the wrong when he tendered scrip instead of money for his fare in going from Soda Springs to Pocatello. Which one of these contentions shall prevail depends upon the mutual rights of the parties in view of the provisions of the contract to which we have invited attention.

Appellant insists that by what he did he had demonstrated that a ticket was not obtainable at Soda Springs, and, this being so, he was authorized to tender scrip as payment of fare on the train, and that it was the duty of the defendant, through its conductor, to receive scrip for that purpose under the circumstances disclosed by the evidence. Is this contention sound? This depends upon the meaning and effect that should be given to the provision of the contract which provides that scrip "will not be honored for passage on trains except from stations where tickets are not obtainable." It is clear that in entering into the contract the parties intended that scrip should be receivable in payment for fare on trains upon one condition only, namely, if the purchaser of a scripbook should desire to board a train at a station where a ticket was not obtainable; that is, where the purchaser could not procure a ticket in exchange for scrip. The word "obtainable," abstractedly considered, perhaps has a much broader meaning than it was intended to be given in the contract. This is manifest on first view. The parties clearly did not intend that scrip might be used as fare on trains if a purchaser, for any possible cause or reason, could not obtain a ticket. The intention evidently was to restrict the word "obtainable" to the ability to obtain tickets by purchase or in exchange for scrip, and not to the broad meaning that tickets could not be obtained by force, theft, trick, or in any manner which is implied by the term "obtainable." If the phrase "not obtainable," therefore, was intended to be applied in a restricted sense, to what extent is it to be restricted?

Appellant contends that the exception provided for was intended to apply to any cause by which the purchaser was

prevented from obtaining a ticket; while respondent contends that the exception was not intended to apply unless it did not have tickets at any station to exchange for scrip. We have already pointed out that the word "obtainable," as used in the contract, cannot be given its full, natural meaning, but must be restricted to mean that scrip could not be used for fare on trains except from stations where tickets could not be exchanged for scrip. In view of the reduction of fare, if scrip was used, from four cents to two and one-half cents a mile, and in view that if the exception were permitted to apply, if for any cause or reason a ticket was not obtainable, it would necessarily lead to constant trouble and contention between respondent's conductors and the purchasers of scrip, it seems only reasonable to hold that the phrase "not obtainable" was intended to be restricted to mean that the exception shall apply only from such stations where respondent did not have tickets on sale, or where scrip could not be exchanged for them by a purchaser of scrip before the departure of the train from a particular station. In the nature of things it is unreasonable to assume that it was intended to place it within the power of the purchaser of scrip to say when and under what circumstances he should be entitled to the reduced fare by using scrip. It seems reasonable that, if respondent failed to have tickets on sale or exchange for scrip, at any station, the purchaser of scrip should not for that reason suffer in his right to use scrip at the reduced rate. Upon the other hand, it is quite unreasonable to suppose that it was intended that the purchaser of scrip could avail himself of the exception if for any cause, including his own fault, he should be unable to obtain a ticket before the departure of a particular train. Moreover, if such was the intention, then the question of whether the conductor was authorized to accept scrip instead of cash for fare on the train would always be in doubt. If the conductor insisted that the passenger pay the regular cash fare, because tickets were on sale, and therefore obtainable at the station at which the passenger boarded the train, the pas-

senger would insist that he did not have time, or for some other reason could not obtain a ticket, and hence was entitled to the reduced rate. The conductor could not verify the correctness of the passenger's statement, because the train would have left the station, and would be on its way past the station, and thus the conductor would be compelled to permit the purchaser to determine the question, or eject him from the train, and possibly involve his employer in a lawsuit and put the passenger to much inconvenience. It is far more reasonable to assume that the parties intended that the exception should apply to a condition which was reasonably certain and fixed, and did not depend upon the mere whim of either party to the contract. It, no doubt, was also assumed that the conductor would be informed, and thus would know at what stations tickets were not on sale, and hence not obtainable for scrip, and that scrip could be used as cash, and at the reduced rate, from such stations only. It was no doubt for this reason that the noun "stations" was inserted in the contract. It was not absolutely necessary to insert the noun "stations" if it had been intended to permit purchasers of scrip to use it instead of money, if for any reason they could not obtain tickets. If, however, it was intended to make the exception applicable to such stations only at which tickets were not kept on sale or for exchange for scrip, the use of the noun "stations" was not only most appropriate, but by not using it the meaning would have been left in greater doubt than it now is.

As we have seen, in any view that may be taken, the natural and ordinary meaning of the word "obtainable" must be restricted in applying the conditions of the foregoing contract. It is therefore only reasonable that it be restricted to that sense which the parties evidently intended it to have in view of all the facts and circumstances. In construing provisions in contracts it is elementary that courts, in order to preserve the real intention of the parties, must frequently either enlarge or restrict the natural and ordinary meaning of words or phrases.

From what we have said it necessarily follows that the court committed no error in directing the jury to find a verdict for respondent. The judgment is affirmed, with costs to respondent.

McCARTY, J., concurs.

STRAUP, C. J.

I concur. I think by the word "obtainable" the parties intended the meaning given it by lexicographers, and as generally understood, to "attain by effort;" to "procure especially by effort." (Standard Dictionary.) So, reading the contract, it means that scrip will not be honored on trains except from stations where tickets are not procurable by effort. That does not mean any effort, but a reasonable effort. It does not mean that if for any cause the holder of scrip was unable to procure a ticket at a station, the scrip should be honored. It does mean that at stations where a reasonable opportunity is afforded to procure a ticket by reasonable efforts, scrip will not be honored from such stations. If at such a station a ticket was obtainable, and the holder of the scrip, through no fault on the part of the carrier, placed himself in a situation where he could not avail himself of the opportunity so afforded, such acts or conduct on his part, or inability, occasioned or created by himself, to obtain a ticket, do not, under the terms of the contract, give him the right to tender scrip. To hold otherwise leads to the conclusion that if a holder of scrip arrives late at a station, to there start upon his journey, and arrives in time only to board the train as it is departing, and not in time to exchange his scrip for a ticket at the station, he would have the right, under the terms of the contract, to tender the scrip on the train. Of course he could assert that a ticket was not obtainable by him at the station, not because a reasonable opportunity was not afforded by the carrier, but wholly because of the lateness of his arrival, and of an inability occasioned or created by himself. The appellant does not contend that upon the evidence adduced he was

entitled to go to the jury on the question as to whether a reasonable opportunity was afforded to obtain a ticket, by, reasonable efforts, at Soda Springs, or that the ticket agent at that place without sufficient reason, refused to wait on him or give him a ticket, or that the agent had sufficient time to do so before the departure of the train. The contention made is that the plaintiff, under the terms of his contract, was entitled to tender scrip on the train from a station where tickets were kept and were on sale, and where reasonable opportunity was afforded to obtain them by reasonable efforts, if for any reason he was unable to obtain a ticket at such a place, and though his inability to obtain it was wholly due to a situation in which he had voluntarily placed himself. To so contend is to say that he was entitled to tender scrip in such case whether his inability to obtain a ticket was created or occasioned by himself or by the carrier. I do not think the contract is susceptible of such a meaning, and it is not reasonable to suppose that the parties intended any such meaning to be given it.